Richard L. Brown, Bar No. 90783
  *rlb@jbblaw.com*
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for Defendant PRAKASH
FAMILY REAL ESTATE, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PRAKASH FAMILY REAL ESTATE, LLC, a California limited liability company dba Comfort Inn Fontana,<br><br>                    Defendant. | Case No. 5:16-cv-01113-SVW-KK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF, THERESA BROOKE'S VERIFIED COMPLAINT**<br><br>Judge:  Hon. Stephen V. Wilson<br>Date:    July 25, 2016<br>Time:   1:30 p.m.<br>Crtrm.: 6<br><br>The Hon. Stephen V. Wilson<br><br>Trial Date:      None Set |

COMES NOW, defendant PRAKASH FAMILY REAL ESTATE, LLC, a California limited liability company dba Comfort Inn Fontana and hereby submits its memorandum of points and authorities in support of its motion to dismiss Theresa Brooke's verified complaint.

## I.      INTRODUCTION

On June 3, 2016, plaintiff Theresa Brooke ("plaintiff"), a resident of Pinal

County, Arizona, filed her verified complaint in the United States District Court-Central District of California alleging violations of the Americans with Disabilities Act, Title III against defendant PRAKASH FAMILY REAL ESTATE, LLC, a California limited liability company dba Comfort Inn Fontana ("defendant").

Plaintiff alleges that she, as a legally disabled woman confined to a wheelchair, was denied access to defendant's hotel because the hotel's facilities have "barriers to use of the swimming pool and Jacuzzi." (Comp. ¶¶1, 3, and 4.) Plaintiff's complaint alleges three causes of action for violations of the following: 1) Title III of the Americans with Disabilities Act, 2) California Unruh Civil Rights Act, Cal. Civ. Code, §§51, 52, and 3) California Disabled Persons Act, Cal. Civ. Code, ¶¶54-54.3.) Plaintiff seeks to recover monetary damages as well as injunctive relief under the various causes of action alleged.

Plaintiff has filed in excess of 100 similar cases in both the United States District Court for the District of Arizona, United States District Court of California-Southern District, and United States District Court of California-Central District. (Ex. 1 and Ex. 2, Decl. Brown ¶3 and ¶5.) These cases were all filed in the calendar years 2015 and 2016. Many of plaintiff's cases contain similar allegations as the instant action regarding ADA violations of public accommodations. (Ex. 3, Ex. 4, and Ex. 5, Decl. Brown ¶¶5-6.)

In the instant action, plaintiff alleges she contacted defendant's hotel on "for purposes of booking a room." (Comp., ¶24.) She asked whether the defendant's hotel had a pool lift for purposes of accessing the swimming pool and Jacuzzi and was advised that the Jacuzzi did not have a pool lift. (Comp., ¶24.) Plaintiff has never visited the defendant's hotel, but vaguely alleges "[B]ut for these barriers, plaintiff would lodge with defendant in the near future." (Comp., ¶25.) She also alleges that "If and when Defendant removes these barriers, Plaintiff will lodge with Defendant's hotel since she has several upcoming planned visits to the Inland Empire area." (Comp., ¶25.) Following this initial contact, plaintiff's agent

1   investigated the defendant's hotel and found the Jacuzzi did not have pool lifts.

2   (Comp., ¶25.)

3       Plaintiff alleges she has suffered an "injury-in-fact" for purposes of standing

4   since she cannot access the Jacuzzi at defendant's hotel and is therefore deterred

5   from visiting the subject hotel. (Comp., ¶26.) She also vaguely alleges that she

6   intends to travel to the defendant's "place of public accommodation in the future for

7   business, pleasure or medical treatment." (Comp., ¶29.)

8       Further, that "Plaintiff has several planned personal and business trips to the

9   Inland Empire area in the coming months and for the indefinite future in light of

10  new business developments in which she recently became involved." (Comp., ¶29.)

11  The verified complaint claims that plaintiff "will lodge at Defendant's hotel" if she

12  "receives notice" that defendant has removed the alleged barriers. (Comp., ¶30.)

13      Plaintiff alleges that but for the "architectural barriers at Defendant's hotel,

14  Plaintiff would consider staying at Defendant's hotel." (Comp., ¶34.) The verified

15  complaint states that in addition to considering staying at defendant's hotel, "she

16  will lodge at Defendant's hotel if and when the barriers are removed." (Comp., ¶34.)

17      The county where plaintiff resides is over 415 miles from defendant's hotel.

18  (Ex. 6, Decl. Brown ¶7.) There is no allegation or record of plaintiff ever staying at

19  the Comfort Inn Fontana. Plaintiff failed to allege any actual plans to stay at the

20  defendant's hotel in her verified complaint even if a pool lift were made available

21  for use of the hotel's swimming pool and Jacuzzi. The speculative allegation that

22  plaintiff "intends to travel" to defendant's hotel "in the future" for purposes of

23  establishing standing in the instant action are insufficient under both the case law of

24  the Ninth Circuit as well as that of the Supreme Court of the United States. Even the

25  pleading's allegation that she will lodge at defendant's hotel if the barriers are

26  removed is insufficient to establish standing here. Consequently, plaintiff's

27  complaint should be dismissed in its entirety for lack of standing.

28  **II.    LEGAL ARGUMENT**

A.   **Plaintiff Lacks Standing To Sue Defendant**

Plaintiff has failed to establish she has standing under Article III of the United States Constitution. Plaintiff is required to show that she has sustained an ""injury-in-fact"-an invasion of a legally protected interest which is (a) concrete and particularized (Citations omitted) and "actual or imminent, not 'conjectural' or 'hypothetical,' (Citations omitted)…there must be a causal connection between the injury and the conduct complained of" which is traceable to the actions of the defendant, and "it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The rule of standing discussed in <u>Lujan</u> applies to ADA actions for injunctive relief. A Plaintiff must show that she has actually visited the public accommodation in order to meet the standing requirement. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. 2011). In Chapman, the court provides a two pronged test to determine standing for ADA actions identical to this case. The court states that "[a]n ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to *return* to a noncompliant facility." Id. at 944 (italics added). While the former prong invites a reading to infer that a plaintiff need not visit the public accommodation to allege injury in fact, Chapman makes clear that such a reading is improper. In discussing the deterrent effect, the court provides there characteristics of deterrence. First, "[s]he is deterred because [s]he has encountered barriers related to [her] disability there. . . , second, if plaintiff can allege sufficient injury when barriers deter [her] from returning to a noncompliant accommodation. . . , and third, when plaintiff suffers injury in fact because discriminatory barriers deter [her] from returning. Id. at 949-950.

Here, plaintiff alleges that she contacted the hotel to inquire about accessing the pool and Jacuzzi and never visited defendant's hotel. (Comp., ¶24.) Plaintiff's

complaint also states she "intends to travel to the location of the Defendant's place of public accommodation in the future for business, pleasure or medical treatment." (Comp., ¶29.)  Further, the complaint alleges she "has several planned personal and business trips to the location of Defendant's hotel in the coming months and for the indefinite future in light of new business developments…" (Comp., ¶29.) Even setting aside the fact that Plaintiff has never actually visited the Defendant's hotel, The United States Supreme Court has stated that the profession of an "intent to return…is simply not enough. Such "someday" intentions—without any description of concrete plans, or indeed even any specification of when the someday will be-do not support a finding of the "actual or imminent" injury that our cases require." Lujan v. Defenders of Wildlife, supra, 504 U.S. 555, 564.

### 1.    Plaintiff Has Failed To Allege Sufficient Facts To Establish Standing

Although the complaint alleges plaintiff has "frequented the location of the Defendant's hotel in the past", the operative pleading is void of any allegation that she has ever visited defendant's hotel. Plaintiff makes only conclusory allegations that she "intends" or "wishes" to travel to defendant's hotel which is insufficient to support a finding of actual or imminent injury. (Comp., ¶¶29 and 34, Lujan v. Defenders of Wildlife, supra, 504 U.S. 555, 564.) There are no facts in the complaint which show plaintiff has any concrete plans or statement of when she intends to visit defendant's hotel. Although plaintiff alleges she will lodge at defendant's hotel if the barriers are removed since she has several trips planned to the "location of the Defendant's hotel," such allegations are insufficient to support a finding of actual or imminent injury. (Comp., ¶¶29, 30 and 34, Lujan v. Defenders of Wildlife, supra, 504 U.S. 555, 564.)

Indeed, plaintiff makes the same allegations in at least three other complaints filed in the United States District Court-Central District, which were ultimately dismissed due to a lack of standing, against hotels in the Southern California. Those

complaints are as follows: 1) THERESA BROOKE v. CLAY ANDRO PETERSON, Case No. SACV 16-0435 AG (DFMx) attached hereto as **Exhibit 1**; 2) THERESA BROOKE v. TRICOM MANAGEMENT, INC., Case No. SACV 16-0618 AG (DFMx) attached hereto as **Exhibit 2**; and 3) THERESA BROOKE v. BEST WESTERN INTERNATIONAL INC., Case No. SACV 16-0665 AG (KESx) attached hereto as **Exhibit 3**. The similar complaints filed by plaintiff demonstrate that plaintiff has no specific intention or concrete plans to stay or visit defendant's hotel versus another hotel in the Inland Empire area. Indeed, plaintiff alleges that "[B]ut for the presence of architectural barriers at Defendant's hotel, Plaintiff would consider staying at Defendant's hotel, and in fact she will lodge at Defendant's hotel if and when the barriers are removed." (Comp., ¶34.)

The fact that plaintiff may consider staying at defendant's hotel is insufficient to establish the requisite possibility of future harm. To consider something is speculative and does not set forth any specific or concrete plan to visit defendant's hotel. The allegation that "she will lodge at Defendant's hotel" is equally speculative as there are no concrete plans alleged in the verified complaint to 1) visit Anaheim or 2) stay at defendant's hotel. (Comp., ¶ 34.) Therefore, plaintiff lacks standing to sue defendant and the complaint is properly dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. Rule 12(b)(1).

### 2. The Court Should Dismiss The Plaintiff's State Law Claims And Decline Supplemental Jurisdiction

Plaintiff lacks standing to sue defendant in the instant action for her federal ADA claims whereby she seeks injunctive relief, costs and attorneys' fees. Since plaintiff lacks standing to sue under the ADA, the Court should properly dismiss plaintiff's State claims by declining to exercise supplemental jurisdiction as to plaintiff's second cause of action for violation of the California Unruh Civil Rights Act and third cause of action for violation of the California Disabled Persons Act.

### III.   CONCLUSION

1    Based on the foregoing, defendant PRAKASH FAMILY REAL ESTATE,

2 LLC, a California limited liability company dba Comfort Inn Fontana, respectfully

3 requests that this Motion to Dismiss to be granted in its entirety.

4

5 DATED:  June 23, 2016                JULANDER, BROWN & BOLLARD

6

7

8                                          By:  _____

9                                                Richard L. Brown

10                                                Attorneys for Defendant PRAKASH
                                                 FAMILY REAL ESTATE, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION TO DISMISS COMPLAINT

Exhibit 1

Peter Kristofer Strojnik, State Bar No. 242728
**THE STROJNIK FIRM LLC**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:  (602) 865-7788
strojnik@skplaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | |
| | **VERIFIED COMPLAINT** |
| vs. | |
| Clay Andro Petersen *dba* Super 8 Anaheim Near Disneyland; | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff alleges:

## PARTIES

1.      Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,

1   52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a

2   wheelchair due to the loss of a leg.

3       2.      Defendant, Clay Andro Petersen, owns and/or operates and does business

4   as the hotel, Super 8 Anaheim Near Disneyland, located at 415 W. Katella Avenue,

5   Anaheim, California 92802. The Super 8 Anaheim Near Disneyland is a public

6   accommodation pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging

7   services.

8                               **INTRODUCTION**

9       3.      Plaintiff Theresa Brooke brings this action against Defendant, alleging

10  violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

11  seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights

12  Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act

13  ("DPA"), California Civil Code §§54-54.3.

14      4.      Plaintiff is a disabled woman confined to a wheelchair. She brings this

15  civil rights action against Defendant for failing to design, construct, and/or own or

16  operate hotel facilities that are fully accessible to, and independently usable by, disabled

17  people. Specifically, Defendant's hotel, which is a place of public accommodation, has

18  barriers to use of the swimming pool and Jacuzzi. Defendant's swimming pool and

19  Jacuzzi do not have acceptable means of entry for disabled persons, notwithstanding

20  that such modifications are readily achievable. Therefore, Plaintiff seeks a declaration

21  that Defendant's hotel violates federal law and an injunction requiring Defendant to

22  install means of access in compliance with ADA requirements so that the swimming

23  pool and Jacuzzi are fully accessible to, and independently usable by, disabled

24  individuals. Plaintiff further requests that, given Defendant's historical failure to

25  comply with the ADA's mandate, the Court retain jurisdiction of this matter for a

26  period to be determined to ensure that Defendant comes into compliance with the

27  relevant requirements of the ADA, and to ensure that Defendant has adopted and is

28

1   following an institutional policy that will, in fact, cause Defendant to remain in

2   compliance with the law.

3          5.      In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter

4   Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona

5   85016.

6                          **JURISDICTION AND VENUE**

7          6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42

8   U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28

9   U.S.C. § 1367.

10         7.      Plaintiff's claims asserted herein arose in this judicial district and

11  Defendant does substantial business in this judicial district.

12         8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c)

13  in that this is the judicial district in which a substantial part of the acts and omissions

14  giving rise to the claims occurred.

15                 **THE ADA AND ITS IMPLEMENTING REGULATIONS**

16         9.      On July 26, 1990, President George H.W. Bush signed into law the ADA,

17  a comprehensive civil rights law prohibiting discrimination on the basis of disability.

18         10.     The ADA broadly protects the rights of individuals with disabilities in

19  employment, access to State and local government services, places of public

20  accommodation, transportation, and other important areas of American life.

21         11.     Title III of the ADA prohibits discrimination in the activities of places of

22  public accommodation and requires places of public accommodation to comply with

23  ADA standards and to be readily accessible, and independently usable by, individuals

24  with disabilities. 42 U.S.C. § 12181-89.

25         12.     On July 26, 1991, the Department of Justice ("DOJ") issued rules

26  implementing Title III of the ADA, which are codified at 28 CFR Part 36.

27         13.     Appendix A of the 1991 Title III regulations (republished as Appendix D

28  to 28 CFR part 36) contains the ADA standards for Accessible Design (1991

1    Standards), which were based upon the Americans with Disabilities Act Accessibility
2    Guidelines (1991 ADAAG) published by the Access Board on the same date.

3        14.    In 1994, the Access Board began the process of updating the 1991
4    ADAAG by establishing a committee composed of members of the design and
5    construction industries, the building code community, and State and local governmental
6    entities, as well as individuals with disabilities.

7        15.    In 1999, based largely on the report and recommendations of the advisory
8    committee, the Access Board issued a notice of proposed rulemaking to update and
9    revise its ADA and ABA Accessibility Guidelines.

10       16.    The Access Board issued final publication of revisions to the 1991
11   ADAAG on July 23, 2004 ("2004 ADAAG").

12       17.    On September 30, 2004, the DOJ issued an advanced notice of proposed
13   rulemaking to begin the process of adopting the 2004 ADAAG.

14       18.    On June 17, 2008, the DOJ published a notice of proposed rulemaking
15   covering Title III of the ADA.

16       19.    The long-contemplated revisions to the 1991 ADAAG culminated with
17   the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards").
18   The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010.
19   The 2010 Standards consist of the 2004 ADAAG and the requirements contained in
20   subpart D of 28 CFR part 36.[1]

21       20.    Notably, the lodging industry requested and received a number of
22   extensions of time before the mandatory requirements of Section 242.2 of the 2010
23   Standards, concerning access to pools, became effective. Notwithstanding, the industry
24   remains largely noncompliant with the requirements.

25

26

27
─────────────────────
[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for
28   existing pools to comply did not become effective until January 31, 2013, at which time
the 2010 Standards became enforceable through civil actions by private plaintiffs.

1

2

3
**THE CALIFORNIA UNRUH CIVIL RIGHTS ACT** *and*

4
**THE CALIFORNIA DISABLED PERSONS ACT**

5
21.     Unruh and the DPA incorporate ADA standards, so a "violation of the

6
ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for*

7
*Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586, 81 Cal. Rptr. 3d 144

8
(2008); *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

9
22.     Unruh provides for injunctive relief, monetary damages in an amount not

10
less than $4,000.00, and for the recovery of attorney's fees and costs.

11
23.     The DPA provides for monetary damages in an amount not less than

12
$1,000.00 and for the recovery of attorney's fees and costs.

13
**ALLEGATIONS COMMON TO ALL COUNTS**

14
24.     Pursuant to CFR 36-302(1)(ii), on or about February 15, 2016, Plaintiff

15
contacted Defendant's hotel for purposes of booking a room for personal and business

16
affairs in the Orange County area. Plaintiff inquired whether Defendant's hotel pool or

17
Jacuzzi ("pool") had a pool lift or other means of access for disabled persons such as

18
Plaintiff. Defendant's representative stated that both the hotel swimming pool did not

19
have a pool lift or other means of access. Accordingly, Plaintiff had actual notice or

20
actual knowledge of the barriers.

21
25.     Plaintiff's agent, an expert in ADA accessibility guidelines, as part of due

22
diligence investigation, independently verified that both the swimming pool and the

23
Jacuzzi did <u>not</u> have pool lifts, and other ADA violations. Plaintiff's agent reported the

24
lack of accessibility to Plaintiff and provided Plaintiff with photographs demonstrating

25
the lack of accessibility, and therefore Plaintiff had actual notice or actual knowledge of

26
the barriers. But for these barriers, Plaintiff would lodge with Defendant in the near

27
future. If and when Defendant removes these barriers, Plaintiff will lodge with

28

1    Defendant's hotel since she has several upcoming planned visits to the Orange County

2    area.

3         26.    Plaintiff has personal knowledge of at least two barriers related to her

4    disability, that is, the swimming pool and the Jacuzzi are inaccessible to her by virtue of

5    her confinement to a wheel chair, and is currently deterred from visiting Defendant's

6    accommodation by this accessibility barrier. Therefore, she has suffered an injury-in-

7    fact for the purpose of her standing to bring this action.

8         27.    Other potential violations and barriers to entry may be discovered through

9    the discovery process, which, if discovered, Plaintiff shall seek to allege further ADA,

10   Unruh and DPA violations. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008)

11   (plaintiff need only allege one instance of ADA violation to achieve standing, but is

12   permitted to then challenge other ADA violations found in the course of discovery).

13        28.    Without the presence of a fixed pool lift or other means of permitting

14   Plaintiff equal access to the swimming pool and Jacuzzi, Plaintiff's disability prevents

15   her from equal enjoyment of the swimming pool and Jacuzzi.

16        29.    Plaintiff has frequented the Orange County area in the past. Plaintiff

17   intends to travel to the location of the Defendant's place of public accommodation in

18   the future for business, pleasure or medical treatment. In fact, Plaintiff has several

19   planned personal and business trips to the Orange County area in the coming months

20   and for the indefinite future in light of new business developments in which she

21   recently became involved.

22        30.    As a result of Defendant's non-compliance with the ADA, Plaintiff will

23   avoid and not stay at the Defendant's place of accommodation in the future for planned

24   trips. However, if Plaintiff receives notice that Defendant removes the barriers, Plaintiff

25   will lodge at Defendant's hotel.

26        31.    The existence of barriers to use the swimming pool and Jacuzzi at

27   Defendant's hotel deterred Plaintiff from staying or returning to seek accommodations

28   at Defendant's hotel. Upon information and belief, other disabled persons were deterred

1   from staying there or otherwise precluded from using the swimming pool and Jacuzzi as

2   guests due to the absence of pool lifts.

3          32.     As a result of Defendant's non-compliance with the ADA, Plaintiff,

4   unlike persons without disabilities, cannot independently use Defendant's swimming

5   pool or Jacuzzi.

6          33.     In violation of Section 242.2 of the 2010 ADA Standards, Defendant's

7   swimming pool and Jacuzzi do not have at least one accessible means of entry in

8   complying with Sections 1009.2 or 1009.3.

9          34.     Plaintiff wishes to travel to the location of Defendant's place of public

10  accommodation for personal, business and/or medical treatment and wants to stay in

11  hotels there. But for the presence of architectural barriers at Defendant's hotel, Plaintiff

12  would consider staying at the Defendant's hotel, and in fact she will lodge at

13  Defendant's hotel if and when the barriers are removed.

14         35.     Upon information and belief, though Defendant has centralized policies

15  regarding the management and operating of its hotel, Defendant does not have a plan or

16  policy that is reasonably calculated to make its entire hotel fully accessible to and

17  independently usable by, disabled people.

18         36.     Plaintiff verified that Defendant's hotel lacks the mandatory elements

19  required by the 2010 Standards to make pools fully accessible to and independently

20  usable by disabled people.

21         37.     As a disabled person, Plaintiff has a keen interest in whether public

22  accommodations that offer public lodging services are fully accessible to, and

23  independently usable by, the disabled, specifically including an interest in ensuring that

24  pools and spas possess all of the features required by the 2010 Standards.

25         38.     Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to

26  ascertain whether it remains in violation of the ADA.

27         39.     Plaintiff and other disabled persons have been injured by Defendant's

28  discriminatory practices and failure to remove architectural barriers. These injuries

include being deterred from using Defendant's facilities due to the inaccessibility of Defendant's pool and the denial of the opportunity to use said pool.

40.    Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel swimming pool and Jacuzzi in violation of her rights under the ADA.

### FIRST CAUSE OF ACTION
### (Violation of Title III the Americans with Disabilities Act)

41.    Plaintiff incorporates all allegations heretofore set forth.

42.    Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

43.    Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

44.    In violation of Section 242.2 of the 2010 Standards, Defendant's swimming pool and Jacuzzi do not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

45.    Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. *Id.*

46.     Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the 2010 Standards, as described above, is readily achievable by the Defendant due to the low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

47.     Conversely, the cessation of compliance with the ADA law is also readily achievable by the removal of a fixed lift. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[3].

48.     Defendant's conduct is ongoing, and, given that Defendant has never complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff

---

[3]  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

1   invokes her statutory right to declaratory and injunctive relief, as well as costs and

2   attorneys' fees.

3       49.   Without the requested injunctive relief, specifically including the request

4   that the Court retain jurisdiction of this matter for a period to be determined after the

5   Defendant certifies that it is fully in compliance with the mandatory requirements of the

6   ADA that are discussed above, Defendant's non-compliance with the ADA's

7   requirements that its pool be fully accessible to, and independently useable by, disabled

8   people is likely to recur.

9       WHEREFORE, Plaintiff demands judgment against Defendant as follows:

10      a.  A Declaratory Judgment that at the commencement of this action

11          Defendant was in violation of the specific requirements of Title III of the

12          ADA described above, and the relevant implementing regulations of the

13          ADA, in that Defendant took no action that was reasonably calculated to

14          ensure that all of its pools were fully accessible to, and independently

15          usable by, disabled individuals;

16      b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

17          applicable,  a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2)

18          and 28 CFR § 36.504(a) which directs Defendant to take all steps

19          necessary to bring its pools into full compliance with the requirements set

20          forth in the ADA, and its implementing regulations, so that the pools are

21          fully accessible to, and independently usable by, disabled individuals,

22          specifically including a pool lift as required by Sections 242.2 and 1009.2

23          of the 2010 Standards, and which further directs that the Court shall retain

24          jurisdiction for a period to be determined after Defendant certifies that its

25          pool is fully in compliance with the relevant requirements of the ADA to

26          ensure that Defendant has adopted and is following an institutional policy

27          that will in fact cause Defendant to remain fully in compliance with the

28          law;

10

c.   Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

d.   Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $3,500.00; and,

e.   Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

f.   The provision of whatever other relief the Court deems just, equitable and appropriate.

## SECOND CAUSE OF ACTION
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

50.   Plaintiff realleges all allegations heretofore set forth.

51.   Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

52.   Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

53.   Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

54.   Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

55.   Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

---

[4] As applicable to ADA cases, see *Coppi v.  City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

11

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

    b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

    c.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

    d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

    e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

    f.  For damages in an amount no less than $4,000.00; and

    g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**THIRD CAUSE OF ACTION**
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

56.    Plaintiff realleges all allegations heretofore set forth.

12

1     57.    Defendant has violated the DPA by denying Plaintiff equal access to its

2 public accommodation on the basis of her disability as outlined above.

3     58.    The DPA provides for monetary relief to "aggrieved persons" who suffer

4 from discrimination on the basis of their disability.

5     59.    Plaintiff has been damaged by the Defendant's non-compliance with the

6 DPA.

7     60.    Pursuant to the DPA, Plaintiff is further entitled to such other relief as the

8 Court considers appropriate, including monetary damages in an amount to be proven at

9 trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

10     61.    Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an

11 amount to be proven at trial. Cal. Civ. Code § 54.3.

12     WHEREFORE, Plaintiff demands judgment against Defendant as follows:

13        a.  A Declaratory Judgment that at the commencement of this action

14            Defendant was in violation of the specific requirements of Unruh; and

15        b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

16            applicable, a permanent injunction pursuant to Unruh which directs

17            Defendant to take all steps necessary to bring its pools into full

18            compliance with the requirements set forth in the Unruh, and its

19            implementing regulations, so that the pools are fully accessible to, and

20            independently usable by, disabled individuals, specifically including a

21            pool lift as required by law, and which further directs that the Court shall

22            retain jurisdiction for a period to be determined after Defendant certifies

23            that its pool is fully in compliance with the relevant requirements of the

24            Unruh to ensure that Defendant has adopted and is following an

25            institutional policy that will in fact cause Defendant to remain fully in

26            compliance with the law; and

27        c.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

28            applicable , the payment of costs of suit; and

1   d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if
2     applicable, the payment of attorneys' fees;
3   e. Order closure of the Defendant's place of public accommodation until
4     Defendant has fully complied with the DPA; and
5   f. For damages in an amount no less than $1,000.00; and
6   g. The provision of whatever other relief the Court deems just, equitable and
7     appropriate.

8         **<u>DEMAND FOR JURY TRIAL</u>**

9    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby
10 demands a jury trial on issues triable by a jury.

11    RESPECTFULLY SUBMITTED this 7th day of March, 2016.

12           **THE STROJNIK FIRM L.L.C.**

13

14

15         /s/ Peter Kristofer Strojnik
           Peter Kristofer Strojnik (242728)
16          2415 East Camelback Road, Suite 700
           Phoenix, Arizona 85016
17          Attorneys for Plaintiff

18

19      **VERIFICATION COMPLIANT WITH R10-3-405**

20    I declare under penalty of perjury that the foregoing is true and correct.

21

22    DATED this 7th day of March, 2016.

23  /s/ *Therese Brooke*

24  _____
    Electronic Signature Authorized
25  Theresa Brooke

26

27

28

Exhibit 2

Peter Kristofer Strojnik, State Bar No. 242728
**THE STROJNIK FIRM LLC**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:   (602) 865-7788
strojnik@skplaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | |
| | **VERIFIED COMPLAINT** |
| vs. | |
| Tricom Management, Inc., a California Corporation *dba* Laguna Shores, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff alleges:

## PARTIES

1.      Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,

1   52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a

2   wheelchair due to the loss of a leg.

3       2.      Defendant, Tricom Management, Inc., owns and/or operates and does

4   business as the hotel Laguna Shores located at 419 N. Coast Highway, Laguna Beach,

5   California 92651. The Laguna Shores is a public accommodation pursuant to 42 U.S.C.

6   § 12181(7)(A), which offers public lodging services.

7                                   **INTRODUCTION**

8       3.      Plaintiff Theresa Brooke brings this action against Defendant, alleging

9   violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

10  seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights

11  Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act

12  ("DPA"), California Civil Code §§54-54.3.

13      4.      Plaintiff is a disabled woman confined to a wheelchair. She brings this

14  civil rights action against Defendant for failing to design, construct, and/or own or

15  operate hotel facilities that are fully accessible to, and independently usable by, disabled

16  people. Specifically, Defendant's hotel, which is a place of public accommodation, has

17  barriers to use of the Jacuzzi. Defendant's Jacuzzi does not have acceptable means of

18  entry for disabled persons, notwithstanding that such modifications are readily

19  achievable. Therefore, Plaintiff seeks a declaration that Defendant's hotel violates

20  federal law and an injunction requiring Defendant to install means of access in

21  compliance with ADA requirements so that the Jacuzzi is fully accessible to, and

22  independently usable by, disabled individuals. Plaintiff further requests that, given

23  Defendant's historical failure to comply with the ADA's mandate, the Court retain

24  jurisdiction of this matter for a period to be determined to ensure that Defendant comes

25  into compliance with the relevant requirements of the ADA, and to ensure that

26  Defendant has adopted and is following an institutional policy that will, in fact, cause

27  Defendant to remain in compliance with the law.

28

5.      In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona 85016.

### JURISDICTION AND VENUE

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

7.      Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

### THE ADA AND ITS IMPLEMENTING REGULATIONS

9.      On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

10.      The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11.      Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

12.      On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13.      Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

14.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17.     On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[1]

20.     Notably, the lodging industry requested and received a number of extensions of time before the mandatory requirements of Section 242.2 of the 2010 Standards, concerning access to pools, became effective. Notwithstanding, the industry remains largely noncompliant with the requirements.

_____

[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for existing pools to comply did not become effective until January 31, 2013, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

## THE CALIFORNIA UNRUH CIVIL RIGHTS ACT *and*
## THE CALIFORNIA DISABLED PERSONS ACT

21.     Unruh and the DPA incorporate ADA standards, so a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586, 81 Cal. Rptr. 3d 144 (2008); *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

22.     Unruh provides for injunctive relief, monetary damages in an amount not less than $4,000.00, and for the recovery of attorney's fees and costs.

23.     The DPA provides for monetary damages in an amount not less than $1,000.00 and for the recovery of attorney's fees and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

24.     Pursuant to CFR 36-302(1)(ii), on or about February 6, 2016, Plaintiff contacted Defendant's hotel for purposes of booking a room for personal and business affairs in the Orange County area. Plaintiff inquired whether Defendant's hotel pool or Jacuzzi ("pool") had a pool lift or other means of access for disabled persons such as Plaintiff. Defendant's representative stated that both the hotel swimming pool and Jacuzzi did not have a pool lift or other means of access. Accordingly, Plaintiff had actual notice or actual knowledge of the barriers.

25.     Plaintiff's agent, an expert in ADA accessibility guidelines, as part of due diligence investigation, independently verified that the Jacuzzi did not have a pool lift, and other ADA violations. For example, the gate latch entry to the pool area requires a twisting motion of the wrist which violates the 2010 standards. Plaintiff's agent reported the lack of accessibility to Plaintiff and provided Plaintiff with photographs demonstrating the lack of accessibility, and therefore Plaintiff had actual notice or actual knowledge of the barriers. But for these barriers, Plaintiff would lodge with Defendant in the near future. If and when Defendant removes these barriers, Plaintiff will lodge with Defendant's hotel since she has several upcoming planned visits to the Orange County area.

26.    Plaintiff has personal knowledge of at least two barriers related to her disability, that is, the Jacuzzi is inaccessible to her by virtue of her confinement to a wheel chair, and is currently deterred from visiting Defendant's accommodation by this accessibility barrier. Therefore, she has suffered an injury-in-fact for the purpose of her standing to bring this action.

27.    Other potential violations and barriers to entry may be discovered through the discovery process, which, if discovered, Plaintiff shall seek to allege further ADA, Unruh and DPA violations. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008) (plaintiff need only allege one instance of ADA violation to achieve standing, but is permitted to then challenge other ADA violations found in the course of discovery).

28.    Without the presence of a fixed pool lift or other means of permitting Plaintiff equal access to the Jacuzzi, Plaintiff's disability prevents her from equal enjoyment of the Jacuzzi.

29.    Plaintiff has frequented the Orange County area in the past. Plaintiff intends to travel to the location of the Defendant's place of public accommodation in the future for business, pleasure or medical treatment. In fact, Plaintiff has several planned personal and business trips to the Orange County area in the coming months and for the indefinite future in light of new business developments in which she recently became involved.

30.    As a result of Defendant's non-compliance with the ADA, Plaintiff will avoid and not stay at the Defendant's place of accommodation in the future for planned trips. However, if Plaintiff receives notice that Defendant removes the barriers, Plaintiff will lodge at Defendant's hotel.

31.    The existence of barriers to use the Jacuzzi at Defendant's hotel deterred Plaintiff from staying or returning to seek accommodations at Defendant's hotel. Upon information and belief, other disabled persons were deterred from staying there or otherwise precluded from using the Jacuzzi as guests due to the absence of pool lifts.

32.     As a result of Defendant's non-compliance with the ADA, Plaintiff, unlike persons without disabilities, cannot independently use Defendant's Jacuzzi.

33.     In violation of Section 242.2 of the 2010 ADA Standards, Defendant's Jacuzzi does not have at least one accessible means of entry in complying with Sections 1009.2 or 1009.3.

34.     Plaintiff wishes to travel to the location of Defendant's place of public accommodation for personal, business and/or medical treatment and wants to stay in hotels there. But for the presence of architectural barriers at Defendant's hotel, Plaintiff would consider staying at the Defendant's hotel, and in fact she will lodge at Defendant's hotel if and when the barriers are removed.

35.     Upon information and belief, though Defendant has centralized policies regarding the management and operating of its hotel, Defendant does not have a plan or policy that is reasonably calculated to make its entire hotel fully accessible to and independently usable by, disabled people.

36.     Plaintiff verified that Defendant's hotel lacks the mandatory elements required by the 2010 Standards to make pools fully accessible to and independently usable by disabled people.

37.     As a disabled person, Plaintiff has a keen interest in whether public accommodations that offer public lodging services are fully accessible to, and independently usable by, the disabled, specifically including an interest in ensuring that pools and spas possess all of the features required by the 2010 Standards.

38.     Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to ascertain whether it remains in violation of the ADA.

39.     Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's facilities due to the inaccessibility of Defendant's pool and the denial of the opportunity to use said pool.

40.     Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel Jacuzzi in violation of her rights under the ADA.

### FIRST CAUSE OF ACTION
**(Violation of Title III the Americans with Disabilities Act)**

41.     Plaintiff incorporates all allegations heretofore set forth.

42.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

43.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

44.     In violation of Section 242.2 of the 2010 Standards, Defendant's Jacuzzi does not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

45.     Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

8

1  access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit

2  can be used to offset the cost of undertaking barrier removal and alterations to improve

3  accessibility. The tax deduction can be claimed for expenses incurred in barrier removal

4  and alterations. *Id*.

5      46.   Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the

6  2010 Standards, as described above, is readily achievable by the Defendant due to the

7  low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that

8  providing access is easily accomplishable without significant difficulty or expense.

9      47.   Conversely, the cessation of compliance with the ADA law is also readily

10  achievable by the removal of a fixed lift. Therefore, injunctive relief should issue

11  irrespective of Defendant's potential voluntary cessation pursuant to the Supreme

12  Court's announcement in *Friends of the Earth* case[3].

13     48.   Defendant's conduct is ongoing, and, given that Defendant has never

14  complied with the ADA's requirements that public accommodations make lodging

15  services fully accessible to, and independently usable by, disabled individuals, Plaintiff

16  invokes her statutory right to declaratory and injunctive relief, as well as costs and

17  attorneys' fees.

18

19

20  _____

[3]  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct.

21  693, 145 L.Ed.2d 610 (2000):

22     It is well settled that a defendant's voluntary cessation of a challenged

23     practice does not deprive a federal court of its power to determine the
       legality of the practice. If it did, the courts would be compelled to leave the

24     defendant free to return to his old ways. In accordance with this principle,
       the standard we have announced for determining whether a case has been

25     mooted by the defendant's voluntary conduct is stringent: A case might

26     become moot if subsequent events made it absolutely clear that the
       allegedly wrongful behavior could not reasonably be expected to recur. The

27     heavy burden of persuading the court that the challenged conduct cannot
       reasonably be expected to start up again lies with the party asserting

28     mootness.

1       49.   Without the requested injunctive relief, specifically including the request

2   that the Court retain jurisdiction of this matter for a period to be determined after the

3   Defendant certifies that it is fully in compliance with the mandatory requirements of the

4   ADA that are discussed above, Defendant's non-compliance with the ADA's

5   requirements that its pool be fully accessible to, and independently useable by, disabled

6   people is likely to recur.

7       WHEREFORE, Plaintiff demands judgment against Defendant as follows:

8       a. A Declaratory Judgment that at the commencement of this action

9          Defendant was in violation of the specific requirements of Title III of the

10          ADA described above, and the relevant implementing regulations of the

11          ADA, in that Defendant took no action that was reasonably calculated to

12          ensure that all of its pools were fully accessible to, and independently

13          usable by, disabled individuals;

14       b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

15          applicable,  a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2)

16          and 28 CFR § 36.504(a) which directs Defendant to take all steps

17          necessary to bring its pools into full compliance with the requirements set

18          forth in the ADA, and its implementing regulations, so that the pools are

19          fully accessible to, and independently usable by, disabled individuals,

20          specifically including a pool lift as required by Sections 242.2 and 1009.2

21          of the 2010 Standards, and which further directs that the Court shall retain

22          jurisdiction for a period to be determined after Defendant certifies that its

23          pool is fully in compliance with the relevant requirements of the ADA to

24          ensure that Defendant has adopted and is following an institutional policy

25          that will in fact cause Defendant to remain fully in compliance with the

26          law;

27       c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

28          applicable, payment of costs of suit;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $3,500.00; and,

    e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

    f.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## SECOND CAUSE OF ACTION
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

    50.    Plaintiff realleges all allegations heretofore set forth.

    51.    Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

    52.    Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

    53.    Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

    54.    Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

    55.    Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

    WHEREFORE, Plaintiff demands judgment against Defendant as follows:

---

[4] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

f. For damages in an amount no less than $4,000.00; and

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

### THIRD CAUSE OF ACTION
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

56.     Plaintiff realleges all allegations heretofore set forth.

12

1    57.    Defendant has violated the DPA by denying Plaintiff equal access to its

2    public accommodation on the basis of her disability as outlined above.

3    58.    The DPA provides for monetary relief to "aggrieved persons" who suffer

4    from discrimination on the basis of their disability.

5    59.    Plaintiff has been damaged by the Defendant's non-compliance with the

6    DPA.

7    60.    Pursuant to the DPA, Plaintiff is further entitled to such other relief as the

8    Court considers appropriate, including monetary damages in an amount to be proven at

9    trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

10    61.    Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an

11    amount to be proven at trial. Cal. Civ. Code § 54.3.

12    WHEREFORE, Plaintiff demands judgment against Defendant as follows:

13    a.  A Declaratory Judgment that at the commencement of this action

14    Defendant was in violation of the specific requirements of Unruh; and

15    b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

16    applicable, a permanent injunction pursuant to Unruh which directs

17    Defendant to take all steps necessary to bring its pools into full

18    compliance with the requirements set forth in the Unruh, and its

19    implementing regulations, so that the pools are fully accessible to, and

20    independently usable by, disabled individuals, specifically including a

21    pool lift as required by law, and which further directs that the Court shall

22    retain jurisdiction for a period to be determined after Defendant certifies

23    that its pool is fully in compliance with the relevant requirements of the

24    Unruh to ensure that Defendant has adopted and is following an

25    institutional policy that will in fact cause Defendant to remain fully in

26    compliance with the law; and

27    c.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

28    applicable , the payment of costs of suit; and

13

d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

f.  For damages in an amount no less than $1,000.00; and

g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this 4th day of April, 2016.

**THE STROJNIK FIRM L.L.C.**


/s/ Peter Kristofer Strojnik
Peter Kristofer Strojnik (242728)
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Attorneys for Plaintiff


**VERIFICATION COMPLIANT WITH R10-3-405**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 4th day of April, 2016.

/s/ *Therese Brooke*
_____
Electronic Signature Authorized
Theresa Brooke

Exhibit 3

1  Peter Kristofer Strojnik, State Bar No. 242728
2  **THE STROJNIK FIRM LLC**
   Esplanade Center III, Suite 700
3  2415 East Camelback Road
   Phoenix, Arizona 85016
4  Telephone:  (602) 510-9409
   Facsimile:   (602) 865-7788
5  strojnik@skplaw.com
6
7  Attorneys for Plaintiff
8
                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10
11

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim,<br><br>                    Plaintiff,<br><br>vs.<br><br>Best Western International, Inc., an Arizona Corporation *dba* Best Western Plus Newport Beach Inn;<br><br>                    Defendant. | Case No:<br><br>**VERIFIED COMPLAINT**<br><br><br>(Jury Trial Demanded) |

12
13
14
15
16
17
18
19
20        Plaintiff alleges:
21
22                          **PARTIES**
23        1.      Plaintiff Theresa Brooke is a married woman currently residing in Pinal
24  County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled,
25  confined to a wheel chair, and is therefore a member of a protected class under the
26  ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR
27  §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,
28

1    52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a

2    wheelchair due to the loss of a leg.

3          2.     Defendant, Best Western International, Inc., owns and/or operates and

4    does business as the hotel, Best Western Plus Newport Beach Inn, located at 6208 West

5    Coast Highway, Newport Beach, California 92663. The Best Western Plus Newport

6    Beach Inn is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A), which

7    offers public lodging services.

8                     **INTRODUCTION**

9          3.     Plaintiff Theresa Brooke brings this action against Defendant, alleging

10    violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

11    seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights

12    Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act

13    ("DPA"), California Civil Code §§54-54.3.

14          4.     Plaintiff is a disabled woman confined to a wheelchair. She brings this

15    civil rights action against Defendant for failing to design, construct, and/or own or

16    operate hotel facilities that are fully accessible to, and independently usable by, disabled

17    people. Specifically, Defendant's hotel, which is a place of public accommodation, has

18    barriers to use of the swimming pool. Defendant's swimming pool does not have

19    acceptable means of entry for disabled persons, notwithstanding that such modifications

20    are readily achievable. Therefore, Plaintiff seeks a declaration that Defendant's hotel

21    violates federal law and an injunction requiring Defendant to install means of access in

22    compliance with ADA requirements so that the swimming pool is fully accessible to,

23    and independently usable by, disabled individuals. Plaintiff further requests that, given

24    Defendant's historical failure to comply with the ADA's mandate, the Court retain

25    jurisdiction of this matter for a period to be determined to ensure that Defendant comes

26    into compliance with the relevant requirements of the ADA, and to ensure that

27    Defendant has adopted and is following an institutional policy that will, in fact, cause

28    Defendant to remain in compliance with the law.

1    5.    In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter
2    Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona
3    85016.

4    **JURISDICTION AND VENUE**

5    6.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42
6    U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28
7    U.S.C. § 1367.

8    7.    Plaintiff's claims asserted herein arose in this judicial district and
9    Defendant does substantial business in this judicial district.

10   8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c)
11   in that this is the judicial district in which a substantial part of the acts and omissions
12   giving rise to the claims occurred.

13   **THE ADA AND ITS IMPLEMENTING REGULATIONS**

14   9.    On July 26, 1990, President George H.W. Bush signed into law the ADA,
15   a comprehensive civil rights law prohibiting discrimination on the basis of disability.

16   10.    The ADA broadly protects the rights of individuals with disabilities in
17   employment, access to State and local government services, places of public
18   accommodation, transportation, and other important areas of American life.

19   11.    Title III of the ADA prohibits discrimination in the activities of places of
20   public accommodation and requires places of public accommodation to comply with
21   ADA standards and to be readily accessible, and independently usable by, individuals
22   with disabilities. 42 U.S.C. § 12181-89.

23   12.    On July 26, 1991, the Department of Justice ("DOJ") issued rules
24   implementing Title III of the ADA, which are codified at 28 CFR Part 36.

25   13.    Appendix A of the 1991 Title III regulations (republished as Appendix D
26   to 28 CFR part 36) contains the ADA standards for Accessible Design (1991
27   Standards), which were based upon the Americans with Disabilities Act Accessibility
28   Guidelines (1991 ADAAG) published by the Access Board on the same date.

14.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17.     On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[1]

20.     Notably, the lodging industry requested and received a number of extensions of time before the mandatory requirements of Section 242.2 of the 2010 Standards, concerning access to pools, became effective. Notwithstanding, the industry remains largely noncompliant with the requirements.

_____

[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for existing pools to comply did not become effective until January 31, 2013, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

**THE CALIFORNIA UNRUH CIVIL RIGHTS ACT *and***

**THE CALIFORNIA DISABLED PERSONS ACT**

21.   Unruh and the DPA incorporate ADA standards, so a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586, 81 Cal. Rptr. 3d 144 (2008); *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

22.   Unruh provides for injunctive relief, monetary damages in an amount not less than $4,000.00, and for the recovery of attorney's fees and costs.

23.   The DPA provides for monetary damages in an amount not less than $1,000.00 and for the recovery of attorney's fees and costs.

**ALLEGATIONS COMMON TO ALL COUNTS**

24.   Pursuant to CFR 36-302(1)(ii), on or about February 22, 2016, Plaintiff contacted Defendant's hotel for purposes of booking a room for personal and business affairs in the Orange County area. Plaintiff inquired whether Defendant's hotel pool or Jacuzzi ("pool") had a pool lift or other means of access for disabled persons such as Plaintiff. Defendant's representative stated that the hotel swimming pool did not have a pool lift or other means of access. Accordingly, Plaintiff had actual notice or actual knowledge of the barriers.

25.   Plaintiff's agent, an expert in ADA accessibility guidelines, as part of due diligence investigation, independently verified that the swimming pool did <u>not</u> have a pool lift, and other ADA violations. Plaintiff's agent reported the lack of accessibility to Plaintiff and provided Plaintiff with photographs demonstrating the lack of accessibility, and therefore Plaintiff had actual notice or actual knowledge of the barriers. But for these barriers, Plaintiff would lodge with Defendant in the near future. If and when Defendant removes these barriers, Plaintiff will lodge with Defendant's hotel since she has several upcoming planned visits to the Orange County area.

26.   Plaintiff has personal knowledge of at least two barriers related to her disability, that is, the swimming pool is inaccessible to her by virtue of her confinement

1    to a wheel chair, and is currently deterred from visiting Defendant's accommodation by

2    this accessibility barrier. Therefore, she has suffered an injury-in-fact for the purpose of

3    her standing to bring this action.

4        27.    Other potential violations and barriers to entry may be discovered through

5    the discovery process, which, if discovered, Plaintiff shall seek to allege further ADA,

6    Unruh and DPA violations. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008)

7    (plaintiff need only allege one instance of ADA violation to achieve standing, but is

8    permitted to then challenge other ADA violations found in the course of discovery).

9        28.    Without the presence of a fixed pool lift or other means of permitting

10    Plaintiff equal access to the swimming pool, Plaintiff's disability prevents her from

11    equal enjoyment of the swimming pool.

12        29.    Plaintiff has frequented the Orange County area in the past. Plaintiff

13    intends to travel to the location of the Defendant's place of public accommodation in

14    the future for business, pleasure or medical treatment. In fact, Plaintiff has several

15    planned personal and business trips to the Orange County area in the coming months

16    and for the indefinite future in light of new business developments in which she

17    recently became involved.

18        30.    As a result of Defendant's non-compliance with the ADA, Plaintiff will

19    avoid and not stay at the Defendant's place of accommodation in the future for planned

20    trips. However, if Plaintiff receives notice that Defendant removes the barriers, Plaintiff

21    will lodge at Defendant's hotel.

22        31.    The existence of barriers to use the swimming pool at Defendant's hotel

23    deterred Plaintiff from staying or returning to seek accommodations at Defendant's

24    hotel. Upon information and belief, other disabled persons were deterred from staying

25    there or otherwise precluded from using the swimming pool as guests due to the

26    absence of pool lifts.

27

28

1    32.    As a result of Defendant's non-compliance with the ADA, Plaintiff,

2  unlike persons without disabilities, cannot independently use Defendant's swimming

3  pool.

4    33.    In violation of Section 242.2 of the 2010 ADA Standards, Defendant's

5  swimming pool does not have at least one accessible means of entry in complying with

6  Sections 1009.2 or 1009.3.

7    34.    Plaintiff wishes to travel to the location of Defendant's place of public

8  accommodation for personal, business and/or medical treatment and wants to stay in

9  hotels there. But for the presence of architectural barriers at Defendant's hotel, Plaintiff

10  would consider staying at the Defendant's hotel, and in fact she will lodge at

11  Defendant's hotel if and when the barriers are removed.

12    35.    Upon information and belief, though Defendant has centralized policies

13  regarding the management and operating of its hotel, Defendant does not have a plan or

14  policy that is reasonably calculated to make its entire hotel fully accessible to and

15  independently usable by, disabled people.

16    36.    Plaintiff verified that Defendant's hotel lacks the mandatory elements

17  required by the 2010 Standards to make pools fully accessible to and independently

18  usable by disabled people.

19    37.    As a disabled person, Plaintiff has a keen interest in whether public

20  accommodations that offer public lodging services are fully accessible to, and

21  independently usable by, the disabled, specifically including an interest in ensuring that

22  pools and spas possess all of the features required by the 2010 Standards.

23    38.    Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to

24  ascertain whether it remains in violation of the ADA.

25    39.    Plaintiff and other disabled persons have been injured by Defendant's

26  discriminatory practices and failure to remove architectural barriers. These injuries

27  include being deterred from using Defendant's facilities due to the inaccessibility of

28  Defendant's pool and the denial of the opportunity to use said pool.

7

40.     Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel swimming pool in violation of her rights under the ADA.

### FIRST CAUSE OF ACTION
**(Violation of Title III the Americans with Disabilities Act)**

41.     Plaintiff incorporates all allegations heretofore set forth.

42.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

43.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

44.     In violation of Section 242.2 of the 2010 Standards, Defendant's swimming pool does not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

45.     Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. *Id*.

46.     Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the 2010 Standards, as described above, is readily achievable by the Defendant due to the low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

47.     Conversely, the cessation of compliance with the ADA law is also readily achievable by the removal of a fixed lift. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[3].

48.     Defendant's conduct is ongoing, and, given that Defendant has never complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

---

[3]  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

1        49.    Without the requested injunctive relief, specifically including the request

2    that the Court retain jurisdiction of this matter for a period to be determined after the

3    Defendant certifies that it is fully in compliance with the mandatory requirements of the

4    ADA that are discussed above, Defendant's non-compliance with the ADA's

5    requirements that its pool be fully accessible to, and independently useable by, disabled

6    people is likely to recur.

7        WHEREFORE, Plaintiff demands judgment against Defendant as follows:

8        a. A Declaratory Judgment that at the commencement of this action

9        Defendant was in violation of the specific requirements of Title III of the

10       ADA described above, and the relevant implementing regulations of the

11       ADA, in that Defendant took no action that was reasonably calculated to

12       ensure that all of its pools were fully accessible to, and independently

13       usable by, disabled individuals;

14       b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

15       applicable,  a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2)

16       and 28 CFR § 36.504(a) which directs Defendant to take all steps

17       necessary to bring its pools into full compliance with the requirements set

18       forth in the ADA, and its implementing regulations, so that the pools are

19       fully accessible to, and independently usable by, disabled individuals,

20       specifically including a pool lift as required by Sections 242.2 and 1009.2

21       of the 2010 Standards, and which further directs that the Court shall retain

22       jurisdiction for a period to be determined after Defendant certifies that its

23       pool is fully in compliance with the relevant requirements of the ADA to

24       ensure that Defendant has adopted and is following an institutional policy

25       that will in fact cause Defendant to remain fully in compliance with the

26       law;

27       c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

28       applicable, payment of costs of suit;

1
2
3
4
5

    d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $3,500.00; and,

6
7

    e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

8
9

    f.  The provision of whatever other relief the Court deems just, equitable and appropriate.

10
11

**SECOND CAUSE OF ACTION**
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

12

50.    Plaintiff realleges all allegations heretofore set forth.

13
14

51.    Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

15
16

52.    Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

17
18

53.    Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

19
20
21

54.    Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

22
23

55.    Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

24

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

25
26
27
28

---

[4] As applicable to ADA cases, see *Coppi v.  City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

f. For damages in an amount no less than $4,000.00; and

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## THIRD CAUSE OF ACTION
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

56.     Plaintiff realleges all allegations heretofore set forth.

12

57.     Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

58.     The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

59.     Plaintiff has been damaged by the Defendant's non-compliance with the DPA.

60.     Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

61.     Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

1      d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if

2         applicable, the payment of attorneys' fees;

3      e.  Order closure of the Defendant's place of public accommodation until

4         Defendant has fully complied with the DPA; and

5      f.  For damages in an amount no less than $1,000.00; and

6      g.  The provision of whatever other relief the Court deems just, equitable and

7         appropriate.

8   <u>**DEMAND FOR JURY TRIAL**</u>

9       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

10  demands a jury trial on issues triable by a jury.

11      RESPECTFULLY SUBMITTED this 10th day of April, 2016.

12                 **THE STROJNIK FIRM L.L.C.**

13

14

15                 <u>/s/ Peter Kristofer Strojnik</u>

16                 Peter Kristofer Strojnik (242728)
                   2415 East Camelback Road, Suite 700

17                 Phoenix, Arizona 85016
                   Attorneys for Plaintiff

18

19          **VERIFICATION COMPLIANT WITH R10-3-405**

20  I declare under penalty of perjury that the foregoing is true and correct.

21

22  DATED this 10th day of April, 2016.

23  /s/ *Therese Brooke*

24  _____
    Electronic Signature Authorized

25  Theresa Brooke

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 9110 Irvine Center Drive, Irvine, CA 92618.

On June 23, 2016, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF, THERESA BROOKE'S VERIFIED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Peter Kristofer Strojnik | Attorney for Plaintiff THERESA |
| THE STROJNIK FIRM LLC | BROOKE |
| Esplanade Center III, Suite 700 | |
| 2415 East Camelback Road | Telephone: (602) 510-9409 |
| Phoenix, Arizona 85016 | Facsimile: (602) 865-7788 |
| | E:Mail: strojnik@skplaw.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 23, 2016, at Irvine, California.



Stephanie Hernandez

NOTICE OF MOTION TO DISMISS COMPLAINT